## ROBERT ROBERTS *vs.* J. G. KNIGHTS.

One alien may sue another in the courts of this commonwealth upon a contract made abroad, if the parties are transiently here.

A seaman is not bound by shipping articles, which describe the contemplated voyages of the vessel as follows: "From Liverpool to Calcutta, thence if required to any ports or places in the Indian, Pacific and Atlantic Oceans, and China and Eastern Seas, thence to a port for orders, and to the continent of Europe, if required, and back to a final port of discharge in the United Kingdom; the term not to exceed three years."

A seaman who, having sailed under shipping articles which are void, has left the vessel, without the consent of the master, at a port where another seaman might readily be procured to supply his place, may recover his wages to that time, although an entry has been made in the log-book that he has deserted.

CONTRACT brought in the police court of Boston by the plaintiff, who is a British subject, against the master of a British vessel, who is also a British subject. The defendant objected, in the police court, that the court had no jurisdiction, and a hearing was thereupon had upon all the questions involved, and the case was dismissed, and the plaintiff appealed to the superior court.

At the trial in the superior court, it was agreed that the plaintiff shipped at Liverpool, under shipping articles which described the contemplated voyages as follows : " From Liverpool to Calcutta, thence if required to any ports or places in the Indian, Pacific and Atlantic Oceans, and China and Eastern Seas, thence to a port for orders, and to the continent of Europe, if required, and back to a final port of discharge in the United Kingdom ; the term not to exceed three years."

The vessel sailed from Liverpool to Calcutta, and thence to Boston, where the plaintiff left her without the defendant's consent, and an entry was duly made of his desertion upon the log-book, and the defendant entered upon the shipping articles that he had been left behind at Boston on the alleged ground of desertion. The British consul in Boston also certified upon the articles that he had inquired into the matter and found the allegation to be true ; and he has not requested the courts of Massachusetts to take cognizance of the case. If the plaintiff had

been discharged in Boston, the amount of wages due to him would have been $69.20.

Upon these facts judgment was ordered for the defendant, and the plaintiff appealed to this court.

*C. G. Thomas*, for the plaintiff, cited, as to the jurisdiction of the court, Gen. Sts. *c.* 123, § 1; and as to the shipping articles, *The Varuna*, 18 Law Reporter, 437; 2 Parsons Mar. Law, 543–7, and cases cited.

*C. W. Loring*, for the defendant. It was a matter for the discretion of the police court whether it should take jurisdiction, and its decision is final. 2 Parsons Mar. Law, 543–7, and cases cited. *Gonzales* v. *Minor*, 2 Wallace, C. C. 348. *Lynch* v. *Crowder*, 12 Law Reporter, 355. If any court should take jurisdiction, it should be a court of admiralty. In the absence of a request by the British consul or a British minister, a peculiar case of hardship, injustice or injury must be shown, of which there is no evidence here. The Merchants' Shipping Act of Great Britain provides that no seaman, engaged for a voyage to terminate in the United Kingdom, shall sue for wages in a foreign court, except in cases of discharge or danger to life. *St.* 17 & 18 Vict. *c.* 104, § 190. Our court should not go out of its way to decide upon the construction of these shipping articles. The entry on the log-book is sufficient entry of desertion.

CHAPMAN, J. The question now presented is, whether our courts are bound to take jurisdiction of this case, both the parties being aliens, and having only a transient residence within the Commonwealth.

The Gen. Sts. do not settle the question. Not much light is thrown upon it by *c.* 123, § 1, cited by the plaintiff's counsel, which provides that, if neither party lives in the state, a transitory action may be brought in any county. Nor have we been able to find any provisions in any of our treaties with Great Britain which give us any aid. The question whether the courts of a country ought to take jurisdiction of litigation between aliens, temporarily residing within its limits, is primarily one of international law.

Vattel, b. 2, c. 8, § 103, says that by the law of nations

disputes that may arise between strangers, or between a stranger and a citizen, ought to be terminated by the judge of the place, and also by the laws of the place. In 2 Kent's Com. (6th ed.) 64, this authority is cited, and the law is stated to be that if strangers are involved in disputes with our citizens, or with each other, they are amenable to the ordinary tribunals of the country. No distinction is made between transient and permanent residents.

In 1650 our colonial legislature passed an act, reciting that " whereas oftentimes it comes to.pass that strangers coming amongst us have sudden occasions to try actions of several natures in our courts of justice," the right is therefore given to them. 3 Col. Rec. 202. See also Anc. Chart. 91. In 1672 another act was passed, confirming and regulating the right. 4 Col. Rec. part 2, 532. See also Anc. Chart. 192. These acts make no exception of cases of transient residence, and they established our municipal law at a very early date.

In *Barrell* v. *Benjamin*, 15 Mass. 354, it was objected that the defendant, whose domicil was in Demerara, being transiently here, was not liable to be sued in our courts by the plaintiff, whose domicil was in Connecticut, and who was also transiently here. The precise question which arises in the present case was not before the court, but the reasoning of Parker, C. J. goes to sustain the marginal note of the case, which is as follows : " It seems that one foreigner may sue another who is transiently within the limits of this state, upon a contract made between them in a foreign country."

In *Judd* v. *Lawrence*, 1 Cush, 531, it was held that an alien resident within the Commonwealth is entitled to the benefit of the insolvent laws. Since *St.* 1852, *c.* 29, aliens have been able to take, hold and transmit real estate. It seems, therefore, to be the policy of modern times to enlarge rather than diminish the rights and privileges of aliens.

The courts of the United States have not jurisdiction where both parties are aliens, because this is not one of the enumerated cases in which jurisdiction is given to them. *Barrell* v. *Benjamin, ubi supra. Turner* v. *Bank of North America*, 4 Dall. 11, *Hodgson* v. *Bowerbank*, 5 Cranch, 303.

The argument *ab inconvenienti*, which is urged on behalf of the defendant, has much force. It is extremely inconvenient to one who is temporarily in a foreign country to be sued by a fellow-countryman in its courts. But it is met by an argument of equal force on the other side. If the plaintiff had no such remedy, he would often be subjected to great hardships. On the whole, it is consonant to natural right and justice that the courts of every civilized country should be open to hear the causes of all parties who may be resident for the time being within its limits.

The defendant relies upon a clause in the Merchants' Shipping Act, (17 & 18 Vict. c. 104,) which provides that, in a contract like that of the plaintiff, no seaman shall sue for wages in any court abroad, except in cases of discharge or of danger to life.

But this act cannot affect the question of jurisdiction, which, on the motion to dismiss, is the only question to be considered. It becomes necessary, then, to consider the merits of the case, the parties having submitted the whole matter to the court.

The statement that the plaintiff left the ship at Boston without leave of the master, and that an entry was clearly made in the log-book of the desertion, is sufficient to establish the fact of the desertion, provided the plaintiff was bound by the shipping articles to remain on board.

But it is objected that the description in the shipping articles of the contemplated voyage is so indefinite that the plaintiff was not bound by them. In the case of *The Crusader*, Ware, 437, it is said by Ware, J., that if there is no limitation of time, and no certain destination or fixed *terminus* of the voyage, either party may put an end to the contract at pleasure, and that it is not desertion to leave the vessel at a port where other hands may be obtained. In the present case there were limitations in the articles. The voyage was to terminate within three years, and in the United Kingdom; the authority of the case referred to does not, therefore, meet the point raised here. But the case of *The Westmoreland*, 1 W. Rob. Adm. 216, seems to us to be decisive. In that case the shipping articles described the voyage to be

"from the port of London to Swan River, Western Australia, from thence to any port or place in the Indian or China Seas, and during her stay and trade there until her return to a port of discharge in Great Britain or the Continent of Europe, (in either case the voyage to end in Great Britain,) and the cargo delivered, if required, and term of time not to exceed three years." This description was held to be too indefinite to be valid. Yet it had, like the articles in the present case, a limitation of three years, and the termination was to be, as in the present case, in Great Britain. In other respects the description of the voyage was more definite than the description in this case; for the voyage in this case extends to " any ports or places in the Indian, Pacific, and Atlantic Oceans, and China and Eastern Seas, thence to a port for orders," &c., it thus including almost every port and sea on the globe. Dr. Lushington, in giving his opinion in the case of *The Westmoreland*, says : " I am yet to learn that such comprehensive ambiguity is necessary for the purposes of trade ; and, if not necessary, I cannot believe that a just construction of this statute will impose any such grievance upon the seaman." Again he says : " I am inclined to say that this statute does not warrant an arbitrary extension of terms not required for the interest of the owner, yet so vague and indefinite as to deprive the mariner of all the benefit intended to be conferred upon him, when the legislature ordained that some information should be conveyed to him of the extent of the obligation into which he was about to enter." The statute to which he refers was *St.* 5 & 6 Will. IV. *c.* 19. The articles in the present case were made under *St.* 17 & 18 Vict. *c.* 104, which contains a revision and codification of the English law on the subject, and is entitled " The Merchants' Shipping Act." Its provisions are not less stringent than those of former statutes, and the decision in the case of *The Westmoreland* is applicable to shipping articles made under it. The ground on which the decision is placed is reasonable and satisfactory, and, the shipping articles upon which the defendant relies being void, the plaintiff had a right to leave the ship at Boston, that being a port where other hands could readily be procured to supply his

place; and he is not to be regarded as a deserter. He is entitled to recover the amount of wages agreed by the statement of the parties to be due, viz: $69.20, with interest from the date of the writ.